CV 13 - 1715

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

ANTONIO HENNIS

                                                    Plaintiff,

                    -against-

CITY OF NEW YORK, POLICE OFFICER ROBERT
MURNANE SHEILD #801, POLICE OFFICER MONICA
GRANDY   SHIELD   #2770,   POLICE   OFFICER
ANNMARIE MURPHY SHIELD #4733 AND POLICE
OFFICERS JOHN DOE 1-3,

                                                    Defendants.

------------------------------------------------------------------ x

COMPLAINT AND
JURY DEMAND

GLASSER, J.

GOLD, M.J.

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2.    The claim arises from a March 31, 2010 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, false arrest, excessive force, and malicious prosecution.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.      The amount in controversy exceeds $75,000.00 excluding interest and costs.

VENUE

7.      Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

PARTIES

8.      Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.      The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.     Police Officer Robert Murnane was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, defendant

Murnane was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause.   Officer Murnane is sued in his individual capacity.

11.   Police Officer Monica Grandy was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York.   On information and belief, at all times here relevant, defendant Grandy was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause.   Officer Grandy is sued in her individual capacity.

12.   Police Officer AnnMarie Murphy was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York.   On information and belief, at all times here relevant, defendant Murphy was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting and assaulting plaintiff without probable cause.   Officer Murphy is sued in her individual capacity.

13.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14.   Within ninety days of the dismissal of the criminal charges, plaintiff filed a

written notice of claim with the New York City Office of the Comptroller.

## FACTUAL ALLEGATIONS

15. On March 31, 2010, Mr. Hennis was inside his home at 43 Dumont Ave, Brooklyn NY. At approximately 6AM, he was inside his bedroom when he heard loud banging at the front door. He walked out of his bedroom toward the front door when four police officers came charging through the door. They had broken down both the outside door to the building and the door leading into Mr. Hennis' apartment

16. The officers charged at Mr. Hennis and accused him of not opening the door. Frightened, Mr. Hennis demanded to know why the officers were inside his home. The officers, including Detective Murnane, struck plaintiff in the face and took him down to his knees. Once on his knees, the officers continued to strike him and eventually maced him. He was handcuffed face down on the floor. Officer Murnane continued to strike him until another defendant officer told him to stop. Mr. Hennis was naked during this entire incident.

17. Eventually, the officers escorted Mr. Hennis outside the home. They only allowed him to put on his boxer shorts. He was placed in the front of the house for at least thirty minutes, handcuffed and on his knees, while several officers searched the home. No illegal substances or contraband were found inside.

18. Plaintiff was taken to the 73rd precinct where he repeatedly asked for medical attention and to speak with the Internal Affairs Bureau. For several hours, officers tried to convince Mr. Hennis that he didn't need to go to the hospital and, if he insisted, his appearance before the judge would be delayed. Mr. Hennis continued to plead for medical attention because his face, eyes and body were burning from the mace and he

was bleeding from his nose and mouth.  Finally he was escorted to Brookdale Hospital where he was treated for his injuries.

19.  The following day Mr. Hennis was brought before the judge and bail was set. He was charged with assaulting an officer and other related offenses based on the false testimony of the defendant officers.  He was sent to Riker's island until the bail was paid. Mr. Hennis made court appearances for the next two years and ten months before he was acquitted on all charges after trial.

20.  At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

21.  During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

22.  As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

a.      Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

b.      Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.      Violation of his New York State Constitutional rights under Article 1,

Section 12 to be free from an unreasonable search and seizure;

d.      Violation of his New York State Constitutional rights under Article 1,

Section 6 to due process;

e.      Physical pain and suffering;

f.      Emotional trauma and suffering, including fear, embarrassment,

humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.      Loss of liberty

h.      Financial loss.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983

23.    The above paragraphs are here incorporated by reference.

24.    Defendants acted under color of law and conspired to deprive plaintiff of his

civil, constitutional and statutory rights to be free from unreasonable search and seizure,

excessive force, malicious prosecution and to due process of law pursuant to the Fourth

and Fourteenth Amendments to the United States Constitution and are liable to plaintiff

under 42 U.S.C. §1983.

25.    Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
### Municipal Liability 42 U.S.C. §1983

26.    The above paragraphs are here incorporated by reference.

27.    The City is liable for the damages suffered by plaintiff as a result of the conduct

of their employees, agents, and servants, in that, after learning of their employees'

violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have

created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

28.    The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

29.    The aforesaid event was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of his police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of his fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

30.    For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected.  The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to

report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.   The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

31.   The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.  Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Commissioner Kelly has done on many occasions.

32.   Further, the City has no procedure to notify individual officers or his supervisors of unfavorable judicial review of his conduct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated his law department from the discipline of police officers, so that civil suits against police officers for actions taken in his capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions.  Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

33.   The City is aware that all of the aforementioned has resulted in violations of

citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

34. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

## THIRD CAUSE OF ACTION
Malicious Prosecution

35. The above paragraphs are here incorporated by reference.

36. Defendants, acting with malice, initiated a prosecution against plaintiff and caused him to be prosecuted.

37. Defendants did not have probable cause to initiate this proceeding.

38. The criminal proceedings were terminated in plaintiffs' favor.

39. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive her of such rights and are liable to plaintiffs under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

40. As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of

this action; and

D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:

Brooklyn, New York
March 28, 2013

TO:

City of New York
Office of Corporation Counsel
100 Church Street
New York, NY  10007

Detective Robert Murnane
Central Robbery Division


Sergeant AnnMarie Murphy
Detective Monica Grandy
Brooklyn Warrant Squad

Respectfully yours,

By: Nicole Bellina, Esq.
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Ave. Fl.3
Brooklyn, NY  11217
(718) 852-3710 x103